UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

RAFAEL ARROYO,

    Plaintiff,

v.

STRUCTURAL STEEL WORKS, INC.,

    Defendant.

Civil No. 12-1664 (JAF)

**OPINION AND ORDER**

We must decide whether an employee's evidence of retaliation is sufficient to withstand his employer's motion for summary judgment in this case brought under the Age Discrimination in Employment Act. Having found that the claim is unsubstantiated, the court grants summary judgment to Defendant.

**I.**

**Background**

Because we must view all facts in the light most favorable to the non-moving party when considering a summary judgment motion, to the extent that any facts are disputed, the facts set forth below represent Plaintiff's version of the events at issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, where Plaintiff's asserted facts do not properly comply with Local Rule 56(c) and (e), we deem Defendant's properly-supported statements as admitted. See Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004) (affirming district court's decision to

deem moving party's statements of facts admitted if opposing party fails to controvert properly).

Plaintiff Rafael Arroyo-Moret ("Arroyo") was an employee of Defendant Structural Steel, a corporation engaged in the sale of steel and construction materials. At the time of his leaving, Arroyo was sixty-nine years of age. (Docket No. 13-2 at 1-2.) Arroyo was hired in 2006 by Maricarmen Aguayo, the Vice-President and person who oversees the company's sales division. (Docket No. 13-2 at 1-2.) As an "inside salesman" Arroyo received and processed purchase orders; prepared price estimates; prepared sales orders; and prepared cut orders (specifying the dimensions of materials to be cut). (Docket No. 13-2 at 4-5.) In January 2007 and January 2008, Arroyo received salary increases. (Docket No. 13-2 at 6.) Then, at some point before May 2008, Plaintiff filed a "Complaint" against Structural Steel for failure to pay his overtime wages. The information about this complaint is vague, lacking a date or a venue, but the court gathers that it was an internal claim.[1]

After Arroyo's overtime complaint, the sales manager sent two memoranda in 2008 instructing Arroyo to arrive at work at 7:00 am and to leave at 5:00 pm so that he did not incur additional overtime. (Docket No. 13-2 at 3, 6-7.)

Arroyo received a disciplinary memorandum after he failed to follow company protocol for verifying checks and accepted one that had been stolen. (Docket No. 13-2 at 8.)

---

[1] The court reminds both parties to be clear in their presentation of relevant facts. Because connotations can be lost in the English translations, it is especially important to specify the nature of claims and where they were filed.

Arroyo made thirty-three mistakes in sales orders between April and December 2009, and he received two more written warnings. (Docket No. 13-2 at 9-10.) Arroyo made one-hundred and fifty mistakes in sales orders in 2010 and 201. He was told in a September 2011 meeting that he must improve, and he received a written memorandum of warning. (Docket No. 13-2 at 12-14.) By October 2011, Arroyo had committed fourteen additional errors. At that time, Aguayo blocked Arroyo's access to the computer program for sales orders. (Docket No. 13-2 at 14-15.) Aguayo asked Arroyo to resign because of his errors; asked Arroyo why he did not retire; and stated that no person of his age had ever worked for the company before. (Docket No. 13-2 at 15-16).

On November 7, 2011, Arroyo filed a discrimination charge against Structural Steel in the Antidiscrimination Unit of the Puerto Rico Department of Labor (ADU). (Docket No. 13-2 at 17.) On November 22, 2011, Arroyo was given a disciplinary memorandum for starting work one hour before his assigned shift. (Docket No. 13-2 at 17.) On December 7, 2011, Arroyo received another disciplinary memorandum after several employees complained that he repeatedly asked them about their hours and compensation and after an employee overheard him telling a client about his problems with the company. (Docket No. 13-2 at 18-20.) In December 2011, several employees reported seeing Arroyo sleeping at his desk with his head down, eyes closed, snoring, and they took pictures of this on January 17 and 18, 2012. (Docket No. 13-2 at 21-22.) In consideration of these reports and pictures, and of Arroyo's prior disciplinary history, Aguayo terminated Arroyo on January 18, 2012. (Docket No. 13-2 at 23-25.) At this point in time, Arroyo was about seventy-five years old.

Arroyo did submit a statement of additional facts in this case. (Docket No. 26.) However, he failed to provide record citations, as required by Local Rule 56(c) and (e). We also remind Arroyo's attorney that, per Local Rule 5(g), "documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English." Finally, we remind the party not to mistake the record.[2]

Arroyo filed this case on August 13, 2012. (Docket No. 1.) Structural Steel filed a motion for summary judgment on May 8, 2013. (Docket No. 13.) On August 08, 2013, both parties filed a Joint Proposed Pretrial Order, which restated their allegations and proposed witness and exhibit lists. (Docket No. 34.)

## II.

## Legal Standard

Structural Steel is entitled to summary judgment on a claim if it can show that there is no genuine dispute over the material facts underlying the claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). We must decide whether a reasonable jury could find for Arroyo in any of his claims when all reasonable inferences from the evidence are drawn in his favor. See Scott v. Harris, 550 U.S. 372, 380 (2007).

---

[2] Arroyo's brief states that "Ortiz testified that everybody in the Company knew" that Arroyo had "an eye condition (cataracts and retina perforation)." (Docket No. 26 at 2.) Yet, Ortiz's deposition states only that she knew Arroyo had "cancer" and that "not everyone knew about it." (Docket No. 13-40 at 30-31, translation at Docket No. 22-4.) This is a blatant misstatement of the record.

### III.

### Discussion

The Age Discrimination in Employment Act (ADEA) prohibits an employer from discriminating against any individual "because of such individual's age." See 29 U.S.C. §§ 621-634. In addition, an employer cannot retaliate against an individual for opposing such discrimination. See 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of his employees … because such individual ... made a charge … under this chapter"); See, e.g., Ramirez Rodriguez v. Boehringer Ingelheim 425 F.3d 67, 84 (1st Cir. 2005).

On November 7, 2011, shortly before the current case, Arroyo filed an age-based discrimination charge against Structural Steel in the Antidiscrimination Unit of the Puerto Rico Department of Labor. (Docket No. 13-2 at 17.) Arroyo now asserts that he was terminated in retaliation for that filing, and that his termination, therefore, violates both federal law and Puerto Rico law. Arroyo's claims are unsubstantiated.

Here, neither party alleges that there is direct evidence of retaliation. Where there is no direct evidence of retaliation our analysis of a claim should follow the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S 792, 802-05 (1973). See Mesnick v. General Elec. Co. 950 F.2d 816, 827 (1st Cir. 2005). Arroyo must first make a *prima-facie* showing of discrimination by showing that (i) he engaged in ADEA-protected conduct, (ii) he was thereafter subjected to an adverse employment action, and (iii) a causal connection exists between the protected conduct and the adverse action. Id. Structural Steel concedes that Arroyo was engaged in ADEA-protected

conduct and that he was thereafter subjected to an adverse employment action. (Docket No. 13-1 at 23.) Therefore, the only issue in establishing Arroyo's *prima-facie* case is whether there is a causal connection between his ADEA-protected conduct and his termination.

If Arroyo makes a *prima-facie* showing of retaliation, then "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision." Id. If Structural Steel articulates such a reason, then Arroyo must show that Structural Steel's reason is "a pretext masking retaliation for the employee's opposition to a practice cast into doubt by the ADEA." Id. The "critical inquiry becomes whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question." Id.

First, we must determine whether a reasonable jury could find a causal connection between the protected conduct and the adverse employment action. If Arroyo survives that threshold question, then we must decide whether a reasonable jury could find that Structural Steel's reason is a mere pretext for retaliation.

A.  **Causal Connection between Protected Conduct and Adverse Employment Action**

Arroyo has not established a *prima-facie* case of retaliation, because he presented no evidence that there was a causal connection between his ADEA-protected conduct and the adverse employment action. Mesnick, 950 F.2d at 827 (stating that showing a causal connection is a necessary third element of a prima-facie case of retaliation). Arroyo foreclosed this line of argument during his deposition, when he testified that he had no

facts to establish such connection. (Docket No. 13- at 23-24.) He responded to the issue clearly and directly:

> Q. What I want to know is if you have any fact that you may make reference to for you to allege that your dismissal was also due to that, to filing the charge.
>
> A. Correct, correct.
>
> Q. <u>Do you have any fact to establish a connection between both or not</u>?
>
> A. <u>No</u>.

(Docket No. 22-1 at 123) (underlining ours). Arroyo buttresses his claim by alleging that he committed no errors in November or December 2011. (Docket No. 24 at 5.) However, Arroyo admitted that after October, he was blocked from preparing electronic sales orders. (Docket No. 13-2 at 15, Docket No. 25 at 4.) Therefore, if blocked, there is no basis for his argument that he worked on electronic sales orders without errors during this time period.

Arroyo was terminated two months and eleven days after he filed an antidiscrimination charge. (Docket No. 13-2 at 17-24.) He alleges that the termination, coupled with the temporal proximity to the protected conduct, satisfies his burden to show causation. (Docket No. 24 at 6.) However, "[t]he fact that he was terminated, rather than merely reprimanded, two months after filing an ADU complaint does not establish that the termination was causally linked to the complaint." <u>Ramirez Rodriguez</u>, 425 F.3d at 85. Further, "chronological proximity does not by itself establish causality, particularly if '[t]he larger picture undercuts any claim of causation.'" <u>Wright v.</u>

CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (quoting Soileau v. Guilford of Maine, Inc. 105 F.3d 12, 16 (1st Cir. 1997)).  Here, Arroyo admitted that he was disciplined in writing four times before filing his discrimination charge and was disciplined in writing twice after filing the charge. (Docket No. 13-2 at 14-18; Docket No. 25 at 3-4.)  This presents a clear pattern preceding any retaliatory motive.  Neither did Arroyo show that Structural Steel disciplined him more harshly than other employees.  Arroyo fails to establish a causal link and, therefore, fails to establish a triable issue of fact regarding retaliation.

**B.     Evidence of Pretext**

Even assuming *arguendo* that Arroyo had provided evidence of a causal link and had, therefore, proven his *prima-facie* case, Structural Steel articulated a legitimate non-discriminatory reason for its employment decision.  Therefore, "the ultimate burden falls on the plaintiff to show that the employer's proffered reason is a pretext masking retaliation for the employee's opposition to a practice cast into doubt by the ADEA." Mesnick, 950 F.2d at 827.  At this stage, we must consider the evidence "as a whole," and determine "whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question." Id.

To show that Structural Steel's reasons were pretextual, Arroyo argues that:  There was close temporal proximity between the protected action and the adverse employment action; there are no contemporaneous records concerning the complaints; Structural Steel failed to implement progressive discipline; the credibility of Structural Steel's witnesses is in question; there was a reliance on subjective criterion; and Arroyo previously

received salary increases. Looking at this evidence individually or together, nothing suggests that Structural Steel's stated reasons were pretextual. The record contains no evidence "from which a reasonable jury could infer that the employer retaliated against him for engaging in ADEA-protected activity." Mesnick, 950 F.2d at 828.

### 1. Temporal Proximity

We discussed this factor at length in the previous section. As we noted, "chronological proximity does not by itself establish causality, particularly if '[t]he larger picture undercuts any claim of causation.'" Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (quoting Soileau v. Guilford of Maine, Inc. 105 F.3d 12, 16 (1st Cir. 1997)). The fact that Arroyo was terminated after he filed a claim "rather than before it does not, standing alone, establish a causal connection between the ADU complaint and the termination." Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 85 (1st Cir. 2005)

### 2. Contemporaneous Records of Complaints

Arroyo claims that there is no contemporaneous documentation of complaints against him, and from this assertion he infers pretext. (Docket No. 24 at 8.) However, Arroyo admits that shortly after filing his ADU complaint on November 7, 2011, he received a disciplinary memorandum on November 22, 2011, for failing to comply with his work schedule. (Docket No. 13-2 at 17-18; Docket No. 25 at 4.) Arroyo also admitted that he received another disciplinary memorandum on December 7, 2011. (Docket No. 13-2 at 21; Docket No. 25 at 6.) These admissions suffice to show contemporaneous records of complaints.

### 3. Progressive Discipline

Before filing his ADU claim, Arroyo received oral warnings and four written disciplinary memoranda, but was always given opportunities to improve his performance. (Docket No. 13-2 at 7-17; Docket No. 25 at 2-4.) After filing his antidiscrimination claim, Arroyo received two disciplinary memoranda: The first for not following his working hours and the second for "harassing" his coworkers and telling clients about his problems with the company. (Docket No. 13-2 at 17-21; Docket No. 25 at 4-6.) However, Arroyo claims that because he was not afforded the opportunity to correct his behavior once he was reported to have slept on the job, the company's reasons for his termination were mere pretext for a retaliatory motive. (Docket No. 24 at 9.) Arroyo's termination was not inconsistent with company policy, and he has not provided evidence that other employees were subjected to less severe discipline for similar conduct. The fact that Arroyo was terminated, rather than merely disciplined, two months after filing a discrimination complaint does not establish that the termination was retaliatory. See Ramirez Rodriguez, 425 F.3d at 85-86.

### 4. Credibility of Defendant's Witnesses

Arroyo claims that because all of Structural Steel's affiants work for the company, their affidavits should be shielded from consideration. (Docket No. 24 at 9-10.) However, case law holds that a witness' connection to the plaintiff's employer does not discredit the testimony of such witness in a case of workplace discrimination or retaliation. Ronda-Perez, 404 F.3d at 45-46.

Arroyo also claims that we should move to trial to determine whether he was sleeping on the job. (Docket No. 24 at 10.) This claim lacks support.

First, Arroyo failed to properly deny the allegation that he was sleeping and snoring on the job, a fact that was apparently photographed through the use of a mobile phone camera. (Docket No. 25 at 6-7.) Arroyo failed to comply with Local Rule 56(c), which requires "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and to support any denials, qualifications, or new assertions by particularized citations to the record." Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 6-7 (1st Cir. 2007). If the non-movant fails to comply with Local Rule 56, "the rule permits the district court to treat the moving party's statement of facts as uncontested." Alsina-Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir. 2005).

Second, even if Arroyo had properly denied the allegation that he has sleeping and snoring, the question is not whether his version is true, but whether his supervisor "believed what [she] had been told by the employees [she] interviewed." Ronda-Perez v. Banco Bilbao Vizcaya Argentaria -- Puerto Rico, 404 F.3d 42, 45 (1st Cir. 2005) (stating also that "Plaintiff's plea that his denials establish triable issues of fact foreclosing summary judgment would, if accepted, spell the end of summary judgment"). Again, Arroyo failed to follow Rule 56 in any of his denials. (Docket No. 25 at 6-7.) His additional statement of facts references testimony that is not in evidence. (Docket No. 26.) (Local Rule 5(g)).

**5.      Subjective Criterion**

Arroyo claims that we should move to trial because Structural Steel relied on subjective criteria and "trivial issues" in its termination decision. (Docket No. 24 at 11.) Arroyo cites a leading case from the Eight Circuit, wherein the allegation that a plaintiff "did poorly on the interview" was subjective and required a denial of summary judgment. Widoe v. District No. 111 Otoe County School, 147 F.3d 726, 730 (8th Cir. 1998). Arroyo fails to advance an argument explaining why testimony from his coworkers that he had snored at his desk and their accompanying pictures, together with his history of disciplinary memoranda, are overly subjective criteria for a personnel decision. (See Docket No. 13-2 at 21-23.)

**6.      Salary Increases**

Arroyo infers pretext from the admitted fact that he received salary increases in January 2007 and January 2008. (Docket No. 24 at 13.) Arroyo, however, does not explain why salary increases four and five years before his termination should give rise to this inference.

**C.      Plaintiff's Commonwealth Claims**

Arroyo alleges violations of parallel rights afforded by the Puerto Rico Civil Code. (Docket No. 1 at 3-4.) Specifically, Arroyo alleges violations of Laws No. 80 and 115 and Articles 1802 and 1803 of the Puerto Rico Civil Code. (Id.)

We have discretion to decline supplemental jurisdiction over the remaining Commonwealth law claims, since we have dismissed all of the claims over which we have original jurisdiction. See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v.

Case 3:12-cv-01664-JAF   Document 45   Filed 08/22/13   Page 13 of 13
Civil No. 12-1664 (JAF)                                                                                    -13-

Gibbs, 383 U.S. 715, 726 (1966) ("if the federal law claims are dismissed before trial… the state claims should be dismissed as well.") In exercising our discretion under § 1367(c), we must consider the issues of "judicial economy, convenience, fairness, and comity." Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 37 (1st Cir. 2003). Having considered these factors, we decline to exercise supplemental jurisdiction over Arroyo's Commonwealth law claims, and we dismiss them without prejudice.

## IV.

## Conclusion

For the foregoing reasons, Structural Steel's summary judgment motion, (Docket No. 13), is **GRANTED**. Arroyo's federal law claims are **DISMISSED WITH PREJUDICE**. Arroyo's Commonwealth law claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 22nd day of August, 2013.

                                            S/José Antonio Fusté
                                            JOSE ANTONIO FUSTE
                                            U. S. DISTRICT JUDGE